UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-11528-RGS

BARRY SPENCER

v.

JAMES BENDER, et al.

MEMORANDUM AND ORDER

March 11, 2010

STEARNS, D.J.

Before the court is the plaintiff's amended complaint for screening under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A.  For the reasons stated below, the court will allow the plaintiff to proceed as to Counts two and six of the amended complaint, and directs the plaintiff to show cause why all other counts should not be dismissed.

BACKGROUND

Spencer is confined at MCI Shirley.  In his lengthy type-written amended complaint, he complains of a wide range of alleged misconduct that occurred at MCI Concord and MCI Shirley.  The court summarizes Spencer's allegations.

I.    MCI Concord

In August 2007, Spencer was classified to MCI Concord on permanent work force status.  He felt that the classification was inaccurate, so he wrote to MCI Concord Deputy Superintendent Karen DiNardo concerning the issue and sent a copy of the letter to MCI Concord Superintendent Peter Pepe.  Neither responded to the plaintiff's concerns.

On August 16, 2007, MCI Concord was on lockdown.  Inmates had gone without

recreation, showers, or access to a private bathroom for three days.  When Spencer questioned Lieutenant Angelo T. Karabatsos about the situation, Karabatsos responded by giving Spencer a disciplinary infraction and had Spencer taken to the Health Services Unit ("HSU").   While in the HSU, Spencer refused to talk to mental health staff.   In retaliation for Spencer's refusal to cooperate, he was placed on "eye-ball watch," during which he was placed in a cold cell without clothing or a blanket.   In protest, Spencer refused to eat or drink for two to three days.  Finally, Correction Officer Stephen M. Pare, who "no longer wanted to play the game staff was palying [sic] with [Spencer]," charged Spencer with a disciplinary infraction, and had Spencer moved to the Special Management Unit ("SMU").   Amend. Compl. ¶ 16.[1]

On August 20, 2007, Pare's disciplinary ticket was presented to Spencer.[2]  Discipline Officer Paul Ouelette offered to have the ticket placed on a continuance without a finding. Ouelette explained that, if Spencer accepted a continuance without a finding, Spencer would be able to maintain his job in the law library as if the charge had never been made, as long as Spencer did not receive another disciplinary charge within the next 30 days. Ouelette further explained that, if Spencer did commit a disciplinary infraction within the

---

[1]All paragraph references in the background section of this memorandum and order are to pages 1-26 of the amended complaint.  Unless bracketed, all capitalization within quotations from the amended complaint are as in the original.

[2]Spencer states in the amended complaint that this event occurred in 2008, rather than in 2007.  However, other allegations in the amended complaint suggest that he was presented with Pare's disciplinary ticket in August 2007.  In other parts of the amended complaint, it appears that Spencer has inadvertently used the wrong year.  In summarizing the factual allegations, the court has attempted to identify what appears to be the correct year.  To the extent the court has erred in this respect, any such mistakes do not have bearing on the court's determination as to whether Spencer has set forth a claim for relief.

next 30 days, he would be subject to sanctions on the original disciplinary charge.  Giving Spencer the option of agreeing to a continuance without a finding allowed the Massachusetts Department of Correction ("DOC") "to circumvent the due process of the displinary [sic] rules and regulations" because "an individual is expected to admit guilt and allow sanctions to be put in place."  ¶ 19.  In this instance, Spencer felt "intimidated and coerced into this process to dispose of a ticket he should of never received."  ¶ 20.

One week later, Spencer was released from the SMU.  He applied to start working again at the law library, be he was told that he could not return to his position.  Spencer wrote to Pepe about the situation.  On September 19, 2007, DiNardo answered Spencer's letter to Pepe.  Even though Oulette had said that the disciplinary charge by Pare would be resolved through a continuance without a finding, DiNardo stated that Spencer had pled guilty to the disciplinary charge, and that MCI Concord Assignment Officer Sergeant Newell, had stated that Spencer had pled guilty.  Spencer informally spoke directly to Newell, DiNardo, MCI Concord Direction of Classification Michael Sedwick and Pepe to try and resolve the issue.  Sedgwick wrote a letter informing Spencer that he if did not get a new job within the prison, he would be reclassified.  Unbeknownst to Spencer, on September 10, 2007, Sedgwick had Spencer reclassified so that he would eventually be transferred to MCI Shirley.  On September 12, 2007, Spencer wrote to Carol Mici, the Director of Classification for the DOC, and asked to be placed at MCI or Norfolk or Baystate so that he could take advantage of the educational opportunities offered at these institutions.

On September 20, 2007, Spencer saw Ouelette in the meal hall and asked him for help in getting at job at MCI Concord.  Ouelette stated that he would look into the matter

3

and expressed his opinion that he thought that the matter could be resolved.  The same afternoon, Spencer was called into the disciplinary office and was presented for the first time with the disciplinary charge that Karabatsos had written over a month earlier.  On September 22, 2007, Spencer wrote MCI Correction Officer Lieutenant Gregory A. Poladian to request a dismissal of the disciplinary charges issued by Karabatsos and Pare and a reinstatement of his job.  The disciplinary charges were dismissed, but Newell refused to place Spencer back on the job list.

On September 6, 2007, Spencer fell while he was getting out of the shower.  The medical staff at MCI Concord–employees of UMASS Correctional Health Program ("UMCH")--refused to send him to an outside facility for treatment.  They prescribed him Motrin and sent him back to his unit.

While at MCI Concord, the DOC did not follow its own regulations concerning the classification of prisoners who have been convicted for multiple offenses and regulations concerning the number of prisoners that can be housed in a cell of a particular size.

II.   MCI Shirley

On October 16, 2007, Spencer was transferred to MCI Shirley.

A.   Medical Care

On November 5, 2007, at about 3:30pm, Spencer told a correction officer that he was suffering extreme pain from his lower back through his legs.  He was told to wait until 7:00 or 8:00 in the evening for treatment, when a medical professional would come to distribute medication.  Medical staff had been giving Spencer Motrin for about four years to alleviate his pain for a hernia, back pain, and leg pain.  His prescription had run out, and he had unsuccessfully tried several times over the preceding three weeks to have the

4

prescription renewed.  Medical staff had also failed to schedule Spencer with follow-up appointments with medical care providers after a chiropractor had diagnosed him with problems with his knees and with a deteriorated disk.

Because November 5, 2007 fell on or near a weekend day, the medical professional who came to Spencer's unit the evening of November 5, 2007 was a nurse rather than a physician; she was not able to "handle the situation nor order the muscle relaxer."  ¶ 42. On November 6, 2007, Spencer wrote a letter to the "Superintendent Medical Director" and the and the Secretary of Public Safety" concerning the lack of  medical care that he had received the previous day.  On November 8, 2007 Kevin Sabourin, the UMCH Health Services Administrator, responded to Spencer in writing, informing him that he had been "seen appropriately and how he should access staff."  ¶ 49.

On November 13, 2007, Spencer was charged a fee for medical care, even though he was not working.  This charge violated Massachusetts prison regulations.  On November 15, 2007, he filed a grievance concerning this issue.

On November 14, 2007, Spencer field a grievance against Sabourin for failing to "address[] the issue of not having a Doctor or RN available on the weekends and or more experienced staff in the Health Services unit."  ¶ 55.

On November 21 and 23 and December 14, 2007, Dyana Nickl, the UMCH Appeals and Grievance Coordinator, wrote to Spencer concerning the grievance process for complaints concerning medical care.  She did not acknowledge that Spencer had already satisfied the first tier of the grievance procedure.  On January 1, 2008, Spencer filed a grievance against Nickl, complaining that she had not appropriately handled Spencer's grievance and subsequent appeal.

On January 4, 2008, Spencer received a response from Sabourin regarding his grievances, stating that Spencer received proper care on November 5, 2007.  On January 8, 2008, Terre Marshell of DOC Health Services responded to a letter that Spencer had sent to DOC Commissioner Harold Clark.   Marshell maintained that Spencer had not followed the correct appeals process.

On January 29, 2008, a paralegal from the Massachusetts Correctional Legal Services sent a letter on behalf of Spencer to Arthur Brewer, the Medical Director of UMCH and Marshell.  The paralegal stated that Brewer and Marshell had failed to address the plaintiff's back problems and hernia, which had been known to UMCH since 2004.

On February 7, 2008, Spencer filed a grievance "due to excruciating pain and having to file several sick slips, and still not being called to renew medication."  ¶ 76.

On February 11, 2008, Spencer wrote Brewer and Marshell "concerning the lack of care with systematic defects." ¶ 77.  On February 12, 2008, Sabourin alleged that Spencer was receiving proper care, even though Spencer was being denied the renewal of his medication. UMCH Nurse Carlos Flores suggested to Spencer that he buy medication from the prison canteen.

On February 29, 2008, Nickl wrote to Spencer, stating that she had reviewed his complaint history and determined that he had not followed the correct grievance procedures.  "[B]ut she did not recognize that there must be a problem if grievances keep coming."  ¶ 87. On March 11, 2008, Marshell wrote to Spencer to explain the steps that Spencer had to take before Marshell would even review Spencer's complaints of lack of medical care.

On June 23, 2008, Spencer received from Flores a disciplinary ticket for missing a medical appointment, even though Spencer had told Flores not to call him for any more medical care.  The same day, Spencer withdrew all consent to be treated by UMCH staff. The next day, Spencer filed a grievance against Flores, alleging that Flores had wrongly given him a disciplinary ticket for his failure to show up for a medical appointment.  Spencer alleged that Flores was retaliating against him for asking that medical appointments no longer be scheduled for him.  MCI Shirley Grievance Coordinator Marcia Biddle denied the grievance and told Spencer to address the matter through the disciplinary process.

Spencer ultimately agreed to a continuance without a finding on Flores's disciplinary charge.  Spencer was concerned that, if he was found guilty on the disciplinary violation, he would no longer be able to participate in the Correctional Recovery Academy.  Spencer later sent a request to MCI Shirley Superintendent Duane MacEachern that the disciplinary ticket be dismissed.  Spencer was informed that he could not withdraw his agreement to a continuance without a finding.

Spencer's medication and bottom bunk pass were revoked in October 2008.  He was informed that he had to see a doctor to have it reinstated.

B.     Access to Religious Publications and Meals

Since 2004, Spencer had written to prison officials, desiring to receive religious books from a particular vendor of Islamic literature and to receive religious meals.  On October 10, 2007, Christopher Mitchell, the new Director of Programs for the DOC, responded to one of Spencer's letters, advising Spencer to send the request to the DOC's "Religious Committee" through Mark Bourdeau, the Director of Treatment.

On December 6, 2007, Spencer received a gift of books from the Islamic Education Center in Potomac, Maryland.  The prison held the books as contraband.  On December 10, 2007, Spencer wrote to MacEachern regarding the books; on December 14, 2007, Spencer spoke personally to MacEachern.   Per MacEachern's instruction, Spencer resubmitted the request.

On December 17, 2007, MCI Shirley Deputy Superintendent Alvin Notice denied Spencer's request without any explanation.  On December 25, 2007, Spencer wrote Notice regarding the fact that publishers of religious materials used distributors, and the need for inmates to receive materials from religious centers distributing materials from publishers. On December 28, 2007, Notice responded, discussing limitations on the list of approved vendors of religious materials and citing security concerns.  Notice also responded that some of the vendors only do business via the internet, and Spencer points out that the inmates do not have access to the internet.

On January 4, 2008, Spencer filed a grievance, alleging that his rights under the First Amendment and the Religious Freedom Restoration Act were being violated because prison officials would not allow him to receive religious materials for Shia Muslims from certain religious book distribution centers.  On January 14, 2008, he filed an appeal of his grievance.

On January 9, 2008, Spencer submitted to Greg McCann[3] a Special Diet Form and a Religious Request Form for adding a vendor to the list of approved vendors.  Spencer had been directed to send this form as part of his efforts to get a religious diet.  On February 12, 2008, the plaintiff resubmitted a request for Halal meals, or in the alternative,

---

[3]Spencer does not identify McCann's job title.

for Kosher meals.  McCann denied the request and directed Spencer to "eat off the cycle menu" or to request a vegetarian diet." ¶ 79.  Spencer wrote to Mitchell, explaining how the DOC was interfering with Spencer's practice of religion.  Spencer also wrote to Clark, "in regards to the lack of response from his subordinate Christopher Mitchell in regards to access to Religious Organizations halal meals, books, and prayer rugs." ¶  89.

MacEachern informed Spencer that his request had been forwarded to the Religious Services Committee on March 14, 2008.  However, "[t]he Religious committee had been sidestepping the issue presented by the plaintiff since 2004 . . . . " ¶ 91.  "Minority muslim groups [were] at the mercy of Muslim Chaplins [sic] who are of the Sunni sect . . . ." ¶ 91.

On July 25, 2008, Spencer filed a grievance to receive Halal meals, due to the ruling in Hudson v. Dennehy, C.A. 01-12145-RGS.  It was returned by Biddle on August 7, 2008. Spencer then wrote "Clark, MacEachern, McCann, Mark Goyea and Alamin Muhammad[4] about the dispairity [sic] in the treatment of muslim religious meals and kosher and christians religious meals, how the latter's meals are pre-packaged and even the juice, when the muslim meals are based on the cycle menue food items are not prepared by a Muslim, negating the whole Halal, of the Halal meal; the kosher meals are pre-pared [sic] by Hebrews or a Hebrew company." ¶ 106.  Spencer filed a grievance concerning  "the unequal protection of the law and the dispairity [sic] between the religious groups meal criteria, involving the Muslim Orthodox Christians abd [sic] Hebrews/Jews." ¶ 110.  When Spencer filed the amended complaint, the Halel means were still not being "made according to the guidelines of establishing a HALEL kitchen."  ¶ 133.

C.     Other Issues

---

[4]Spencer identifies Gonyea and Muhammad as "Administrators of the DOC." ¶ 106.

9

On January 4, 2008, Spencer filed a grievance, complaining that the he had been improperly reclassified as a result of the disciplinary write-ups against him at MCI Concord. Spencer stated that the reclassification was improper because the disciplinary charges had been dismissed.  On January 9, 2008, MCI Shirley Grievance Coordinator Sandra Walsh denied the grievance on the ground that Spencer had been fired from his position working at the law library at MCI Concord.  On January 14, 2008, Spencer appealed the denial of his grievance.  On April 28, 2008, Spencer wrote Clark, complaining that the DOC was not following its own procedures for classification.

On January 21, 2008, Spencer almost fell while getting out of the shower.  He wrote a grievance requesting that shower mats be provided–a request that had been granted when he was at MCI Concord.  Walsh denied the request.

On February 8, 2008, plaintiff wrote a grievance asking that door windows and shower windows be covered to allow prisoners privacy while using the shower or the toilet. Walsh denied the request, and MacEachern "alleged the physical plan has the appropriate level of privacy."  ¶ 83.

On February 25, 2008, Spencer wrote John Auerbach, Commissioner of Health and Human Services, about the living conditions at MCI Shirley.  Spencer complained about "the small cells, the out-break of MRSA due to the uncleanlyness [sic], double bunking, Non-Screening of individuals having people with TB, HIV, AIDS, Hep A-C, MRSA, and other contagious conditions housed with other people in the close quarters, the Smell of Urine and Feces throughout the Camp, No toliet [sic] in the yard, water being unclean, etc." ¶ 84.  Auerbach wrote back, "side-stepping the issues."  Id.

Spencer filed a grievance concerning the "conversion of his funds," in violation of DOC regulations, to pay medical expenses.  ¶ 85.

On June 28, 2008, plaintiff sent Biddle a list of grievances to which Grievance Coordinator Kristie Ladouceur had failed to respond.

Spencer complains that inmates with drug convictions are discriminated against because they cannot to work in the health service units, while inmates with rape convictions "can work with women all day."  ¶ 121.  Spencer also complains that inmates' television sets were not converted from analogue to digital reception.

III.   Claims

Spencer brings eleven claims against twenty-six defendants.[5] He alleges that the defendants have violated his federal and state rights by failing to provide proper oversight of medical care, adequately treat his pain and other medical problems, provide religious publications and meals, respond to grievances, and provide acceptable living conditions. For ease of discussion, each claim is separately discussed below.

DISCUSSION

When a plaintiff seeks to bring an action without prepayment of the filing fee, summonses do not issue until the court reviews the operative complaint and determines that it satisfies the substantive requirements of 28 U.S.C. § 1915.  Similarly, under 28 U.S.C. § 1915A, prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity are also subject to screening.  Both

_____

[5]These claims are set forth in eleven paragraphs, numbered 1-11, in pages 26-28 of the amended complaint.  Although Spencer does not identify each claim as a "Count," for ease of reference, the court will refer to each claim as "Count ___" and will include the corresponding paragraph number.

§ 1915 and § 1915A authorize federal courts to dismiss a complaint <u>sua sponte</u> if the claims therein are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989); <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992); <u>Gonzalez-Gonzalez v. United States</u>, 257 F.3d 31, 37 (1st Cir. 2001).  In conducting this review, the court liberally construes the amended complaint because the plaintiff is proceeding pro se.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972).

In determining whether a plaintiff has stated a claim upon which relief may be granted, the court must consider whether the plaintiff has met the pleading requirements of Fed. R. Civ. P. 8(a).  Under this rule, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At a minimum, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Calvi v. Knox County</u>, 470 F.3d 422, 430 (1st Cir. 2006) (quoting <u>Educadores Puertorriqueños en Acción v. Hernández</u>, 367 F.3d 61, 66 (1st Cir. 2004)).  This means that the statement of the claim must "at least set forth minimal facts as to who did what to whom, when, where, and why." <u>Id.</u> (quoting <u>Educadores</u>, 367 F.3d at 68).  Further, a plaintiff's obligation to provide the grounds of his claim "requires more than labels and conclusions."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  A court is not "bound to accept as true a legal conclusion couched as a factual allegation," and "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> (quoting in part <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)); <u>see</u>

also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of a cause action,

supported by mere conclusory statements, do not suffice.").

Upon review of the amended complaint, the court determines that only Counts two

and six of state a claim upon which relief may be granted.

I.      Count One:

In Count One of the amended complaint, Spencer alleges:

> The combined failures of DOC, James Bender, Harold Clark, Terre
> Marshell, Timothy Hall and John Auerbac[h], to have in place a mechanism
> to better review medical cases that are the nexus of a grievance for lack of
> care, instead of placing all the power in the hands of the medical provider,
> especially when the quality of care is to a lesser degree, constitutes
> deliberate indifference to serious medical needs.

Amend. Compl. at 26, ¶ 1.  Construing this claim as one under 42 U.S.C. § 1983 for a

violation of Spencer's Eighth Amendment right to be free from deliberate indifference to

serious medical needs, this claim fails to state a claim upon which relief may be granted.

It is presumed that, in the prison setting, "non-medical officials are entitled to defer to the

professional judgment of the facility's medical officials on questions of prisoners' medical

care." Hayes v. Snyder, 546 F.3d 516, 527 (7th Cir. 2008); see also Hernandez v. Keane,

341 F.3d 137, 148 (2d Cir. 2003) (no deliberate indifference on part of grievance reviewer

who delegated responsibility for investigating inmate's complaints about his medical needs

to other prison staff); Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (non-medical

professionals not deliberately indifferent for failing to respond to inmate's complaints when

prisoner is ostensibly under care of medical experts).  Here, Spencer does not allege facts

from which the court may reasonably infer that any of these defendants, who were not

charged with directly providing medical care to Spencer, are not entitled to this presumption.

Further, the DOC, which is an agency of the Commonwealth of Massachusetts, is not a proper defendant in a § 1983 claim.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (state not a "person" within the meaning of § 1983); see also Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985); Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Hudson Sav. Bank v. Austin, 479 F.3d 102, 105-06 (1st Cir. 2007) (except in limited circumstances, state an its agencies enjoy Eleventh Amendment immunity from suit in federal court).  Finally, Spencer does not allege facts from which the court may infer that  that Bender, Clark, Hall, or Auerbach or Clark were directly involved in the alleged lack medical care; and, respondeat superior is not an acceptable basis for liability under § 1983.  See Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005) ("[O]nly those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable [in a § 1983 action].").

II.    Counts Two and Six

In Count Two of the amended complaint, Spencer alleges that the UMCH "staff", Sabourin, Flores, Brewer, Nickl and "unknown John and Jane Does" violated his right under the Eighth Amendment of the United States Constitution by being deliberately indifferent to his need for medical care for his hernia, deteriorated disk, and his knee problems and hands."  Amend. Compl. at 26, ¶ 2.  For purposes of this preliminary screening, the court will allow this claim to go forward.  However, summons will not issue at this time as to the

unnamed members of the UMCH staff and the John and Jane Does because Spencer does not know, or has not identified, the true identity of these parties.

Count Six of the amended complaint concerns Spencer's allegations that he was denied access to religious materials and meals.  The court will allow this claim to go forward at this time; however, summons will not issue as to the "Religious Committee DOC" because this is not a suable entity.

If Spencer discovers the identify the UMCH staff, the John and Jane Does, or the individual members of the "Religious Committee DOC," he may seek to further amend the complaint in accordance with Fed. R. Civ. P. 15.[6]

III.     Count Three

In Count Three of the amended complaint, Spencer alleges that Marshell, Brewer, Bender, Clark, MacEachern, the DOC and UMCH

> allowed subordinates to go unchecked in their actions although they were trampling all over the plaintiff's due process and other State Statutory and Common Law Rights and both State and Federal Constitutional Rights, constitutes deliberate indifference to those rights, notwithstanding emotional duress based upon the violation of his rights.

Amend. Compl. at 26, ¶ 3.

This claim is subject to dismissal.  As a threshold matter, it is vague and insufficient to give the defendants notice of the claim against them.  After 146 paragraphs of factual

---

[6]Although the use of fictitious names to identify defendants is not favored, situations may arise where the identify of an alleged defendant cannot be known prior to the filing of a complaint.  See Martínez-Rivera v. Ramos, 498 F.3d 3, 8 (1st Cir. 2007).  If, through discovery, Spencer discovers the true names of the UMCH staff and the John and Jane Does who were allegedly indifferent to his medical needs, he "should act promptly to amend the complaint to substitute the correct parties and to dismiss any baseless claims." Id. at 8 n.5.  He may then also file a motion for issuance of summonses for these defendants.  If summonses issue, the United States Marshal shall complete service as directed by plaintiff with all costs of service to be advanced by the United States.

allegations concerning a wide range of conduct–from the failure to provide a shower mat, to inadequate medical care, to a failure to provide equipment to allow a televison to receive a digital signal–Spencer's conclusory statement that these defendants "allowed their subordinates to "trampl[e]" over the plaintiff's federal and state rights is insufficient to identify the conduct for which Spencer seeks to hold these defendants liable.

Furthermore, by invoking the language of "deliberate indifference," Spencer suggests that he is bringing a claim for a violation of his rights under the Eighth Amendment of the United States Constitution, which prohibits cruel or unusual punishment.  Although "'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment," Farmer v. Brennan, 511 U.S. 825, 828 (1994), as noted above, a supervisory cannot be found to be liable under § 1983 absent some showing of direct participation in the alleged constitutional deprivation, see Cepero-Rivera, 414 F.3d at 129. Spencer does not allege facts from which the court may reasonably infer that these supervisors were directly involved in the alleged wrongdoings of their subordinates.

IV.    Counts Four, Five, Ten, and Eleven (Due Process)

In Counts Four and Five, Spencer claims that his right to due process was violated because various defendants (1) did not properly respond to his grievances; (2) transferred him to MCI Shirley; and (3) wrote disciplinary tickets against him.  In Count Ten, Spencer claims that Goyea, who allegedly played a role in denying Spencer religious meals, and Goyea's staff conspired to violate Spencer's liberty interests.  In Count Eleven, Spencer alleges that Biddle, MacEachern, and Ladouceur "worked together to usurf [sic] several of the plaintiff's liberty interests."  Amend. Compl. at 28, ¶ 11.

16

In these counts, Spencer fails to state a violation of his right to due process because he has not alleged facts from which the court may reasonably infer that he had a liberty interest in avoiding any of the conditions of confinement of which he complaints. The Due Process Clause of the Fourteenth Amendment "protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). An inmate does not, however, have a liberty interest in avoiding a particular condition of confinement, including a particular security classification or placement in a particular facility, unless the condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 222-23 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)); see also id. at 485-86 (holding that prisoner did not have liberty interest in avoiding placement in segregation for 30 days, so no process was due to him prior to placement in segregation). None of the conduct of which Spencer complains in the amended complaint presents an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." For example, Spencer did not have a liberty interest in avoiding placement in MCI Shirley. See Dominique v. Weld, 73 F.3d 1156, 1159-60 (1st Cir. 1996) (applying Sandin, and holding that inmate who was participating in a work release program did not have a liberty interest in avoiding transfer to MCI Shirley, because placement at MCI Shirley because transfer did not affect the duration of his sentence or subject the prisoner to "conditions no different from those ordinarily experienced by large numbers of other inmates serving their sentences in customary fashion"). Spencer did not have a liberty interest in prison employment. See DeWalt v. Carter, 224 F.3d 607, 613 (7th Cir. 2000); Bulger v. United States Bureau of

Prisons, 65 F.3d 48, 50 (5th Cir. 1995).  Similarly, the writing of a disciplinary infraction or the failure to respond to a grievance to the satisfaction of the inmate does not, standing alone, implicate a liberty interest.   See Gay v. Shannon, 211 Fed. Appx. 113, 116 (3d Cir. 2006) (issuance of false misconduct report did not deprive inmate of a protected liberty interest); Stringer v. Bureau of Prisons, 145 Fed. Appx. 751, 753 (3d Cir. 2005) (prison officials' alleged failure to process or respond to grievances was did not violate inmate's right to due process); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (prisoners do not have a liberty interest in a particular grievance procedure); see also West v. Frank, 2006 WL 2009023, at *5 (W.D. Wisc. July 17, 2006) (prisoner's dissatisfaction with remedy he received through prison grievance process "does not furnish the basis for a due process claim").

V.     Count Seven

In Count Seven, Spencer alleges that the closure of a minimum security facility or facilities has violated unspecified constitutional and statutory rights.  According to Spencer, the decrease in minimum security placements has resulted in overcrowding in medium security facilities, which has led to the installation of additional beds in violation of state law and:

> overcrowding, effecting the opportunity for schooling/vocationalism; jobs; programs; excessive waste (urine & Feces) contaminating the the camp with foul oders; lack of privacy within cell restroom & showers, although abridged; excessive fight and violance; the mixing of sick and contagiuos individuals with with the non-effected leading to the possibility of infection due to the close quarters; there were outbreaks of MRSA at OCCC, Concord and Shirley (plaintiff has been effected at each camp).

Compl. at 27-28, ¶ 7 (spelling and diction as in original).

The court construes this claim as being brought under § 1983 for a violation of Spencer's right under the Eighth Amendment.  This claim, however, fails to state a basis of relief.  The Eighth Amendment's prohibition on "cruel and unusual punishments," U.S. Const. amend. VIII, proscribes only those conditions of confinement which deprive an inmate of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Spencer's allegation that schooling and vocational programs are lacking in the medium security prisons does not implicate the Eighth Amendment.  Although such programs may be beneficial to prisoners, the absence of these educational opportunities cannot be said in any way to violated the government's responsibility to provide minimal life necessities.  The alleged lack of privacy, while unpleasant, does not present an Eighth Amendment violation.

Further, this claim fails to meet the notice pleading requirement of Fed. R. Civ. P. 8(a).  Despite the length of the amended complaint, Spencer only raises allegations of unsanitary conditions in one paragraph of the body of the amended complaint.  See Amend. Compl. ¶ 84.  These cursory allegations do not provide adequate notice of the alleged conditions.  Without allegations concerning when these conditions existed, the severity of these conditions, and the duration of these conditions, the court cannot reasonably infer that Spencer was deprived of life's necessities and that the conduct of the defendants was wanton.  See Wilson v. Seiter, 501 U.S. 294, 302 (1991) (offending conduct by prison officials vis-à-vis prison conditions must be wanton to violate Eighth Amendment); see also id. 305 ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); Hutto v. Finney, 437 U.S. 678, 687 (1978) (noting that unpleasant conditions

19

of confinement "might be tolerable for a few days and intolerably cruel for weeks and months").  Further, except for making the vague statement that he was personally "effected" by infection outbreaks, Spencer does not specify the extent to which these alleged conditions have harmed him personally; Spencer only has standing to bring claims for injuries that he has suffered.  See Pagán v. Calderón, 448 F.3d 16, 27 (1st Cir. 2006).

VI.    Counts Eight and Nine

Count Eight reads: "The conspired acts of DOC Defendants herein mentioned, and Auerbach, has violated the plaintiff's 8th Amendment Rights and Civil Rights, by the herein discribed [sic] act or lack thereof."  Amend. Compl. at 28, ¶ 8.  Count Nine reads:

> All Defendants either individually or collectively, have failed n their duties, allowing the plaintiff's State and Federal Constitutional Rights, Statutory and Common Law Rights to be violated, and in some incidents, the even conspired to violate those Rights, and those actions have caused emotional duress predicated upon the loss of those rights and/or liberties, also it constitutes deliberate indifference.

Id. at 28, ¶ 9.  Given the length of the amended complaint and the numerous allegations therein, these counts are too vague and ambiguous to state a claim for relief.  Further, they appear to simply be duplicative of the more specific counts.

ORDER

Accordingly, for the reasons stated above:

1.    The court will allow Counts Two and Six to go forward.

2.    All other counts will be dismissed unless the plaintiff shows good cause, in writing, why the Counts should not be dismissed for the reasons stated above.  The plaintiff has 45 days to comply with this directive.

3.      The Clerk shall issues summons as to defendants Brewer, Flores, Nickl, Sabourin, Bender, Clark, DOC, MacEachern, Mitchell, and Pepe.   The United States Marshal shall serve a copy of the summonses, amended complaint, and this order upon these defendants as directed by plaintiff with all costs of service to be advanced by the United States.  The plaintiff shall have 120 days to complete service.

SO ORDERED.

  /s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE